# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 4, 2025

Lyle W. Cayce
Clerk

No. 25-20096

———————

In the Matter of Galleria 2425 Owner, L.L.C.

*Debtor*,

Ali Choudhri,

*Appellant*,

*versus*

National Bank of Kuwait, S.A.K.P., New York Branch,

*Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:24-CV-3198

———————————————————————

Before Southwick, Higginson, and Douglas, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:[*]

In this bankruptcy appeal, Ali Choudhri appeals the dismissal of his third amended complaint asserting various claims against the National Bank of Kuwait relating to tax liens against property of the Galleria 2425 Owner,

———————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-20096

LLC bankruptcy estate. Finding no error in the district court's order affirming the bankruptcy court's denial of the motion to remand and dismissal of the adversary proceeding, we AFFIRM.

## I.

National Bank of Kuwait ("Bank") entered into a loan agreement with the debtor that forms the starting point of this litigation, which is extensive and will not be repeated at length here.[1] Choudhri is the member/manager of a series of limited liability companies through which he controlled the debtor. Choudhri is also the principal of several related entities who filed claims against the debtor. Choudhri has engaged in protracted litigation in both the Texas state courts and the bankruptcy court to prevent the Bank from foreclosing on an office building in Houston, Texas (the "Property").[2]

Despite the Property having now been sold, pursuant to a confirmed bankruptcy plan, Choudhri continues to pursue claims against the Bank relating to a confidential settlement agreement dated August 22, 2022 (the

---

[1] The bankruptcy court's memorandum opinion confirming the debtor's plan of reorganization sets forth at great length the litigation brought by Choudhri. *In re Galleria 2425 Owner, LLC*, 2024 WL 3170626, n.48 (Bankr. S.D.Tex. June 22, 2024). Since that date, Choudhri, or an entity controlled by Choudhri, has filed the additional following appeals in the district court in just this bankruptcy case: Case No. 24-2590, appeal of order confirming chapter 11 plan; Case No. 24-3834 appeal of order on claim objection; Case No. 24-4835, appeal of order requiring Jetall to vacate the debtor's Property; Case No. 24-4836, appeal of order relating to the gatekeeping provision in the chapter 11 plan; Case No. 25-439, appeal of order canceling notice of lis pendens filed by Jetall against the debtor's Property; Case No. 25-705, appeal of order granting emergency motion for contempt against Jetall and 2425 WL, LLC; and Case No. 25-2553, appeal of order approving motion to compromise.

[2] There have been two bankruptcy cases and three state court lawsuits concerning this same Property since the inception of the loan from the Bank in 2018.

No. 25-20096

"CSA"). The parties to the CSA are the Bank, the debtor, Choudhri, and related Choudhri entity Naissance Galleria, LLC.

Choudhri individually filed two proofs of claim against the debtor on April 9, 2024. One of these claims, Claim No. 21, was based on Choudhri's claim to the tax liens, which he had transferred to the Bank as part of the CSA.

Despite raising his claims in the bankruptcy case, on April 26, 2024, Choudhri filed a lawsuit in Texas state court naming the Bank as a defendant (the "State Court Suit").

The original petition in the State Court Suit prayed that the state court would "enter an Order declaring Plaintiff the rightful owner of the Tax Liens, [and] order Defendant NBK to execute any documents necessary to establish that fact as a matter of record" Thus, Choudhri asked the Texas state court to adjudicate the same claim he raised in his proof of claim filed with the bankruptcy court.

On June 7, 2024, the Bank removed the State Court Suit to the bankruptcy court.[3] Choudhri filed a motion to remand, which the Bank opposed. Choudhri later filed his third amended complaint, and the Bank filed a motion to dismiss the adversary proceeding.

Choudhri appealed both the bankruptcy court's order denying his motion to remand, and the bankruptcy court's order granting the Bank's motion to dismiss. The district court affirmed the bankruptcy court.

_____

[3] Choudhri had amended the original petition in the State Court Suit twice at the time of removal.

3

## II.

"We review the decision of a district court, sitting in its appellate capacity, by applying the same standards of review to the bankruptcy court's finding of fact and conclusions of law as applied by the district court." *Matter of Highland Capital Management*, 57 F.4th 494, 499 (5th Cir. 2023) (quoting *In re ASARCO, L.L.C.*, 650 F.3d 593, 600 (5th Cir. 2011)) (internal quotations omitted). "We review the bankruptcy court's conclusions of law, as well as mixed questions of law and fact, *de novo*, and the bankruptcy court's findings of fact for clear error." *Id.* (citing *In re ASARCO, L.L.C.*, 650 F.3d at 600).

The parties agree that we have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d)(1).

## III.

On appeal, Choudhri first contests the jurisdiction of the bankruptcy court.

The bankruptcy court found that it had jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.

As the Bank correctly points out, Choudhri's jurisdictional argument conflates jurisdiction under 28 U.S.C. § 1334(b) with the non-exclusive list of core matters that bankruptcy courts have authority to hear and resolve that is set forth in 28 U.S.C. § 157. *See Matter of Baudoin*, 981 F.2d 736, 740 (5th Cir. 1993).

Section 1334(b), which sets forth the jurisdiction of bankruptcy cases and proceedings, states:

> Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts

4

shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b).

Section 157(b)(2) provides that core proceedings include the following: "allowance or disallowance of claims against the estate"; "counterclaims by the estate against persons filing claims against the estate"; "confirmations of plans; orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate"; and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship." 28 U.S.C. § 157(b)(2)(B), (C), (L), (N), and (O).

On April 9, 2024, Choudhri filed Proof of Claim No. 21, asserting a secured claim of $4,176,657.46 against the bankruptcy estate, and attaching an assignment of the tax liens. The trustee filed an objection to the claim.

Filing the proof of claim subjected Choudhri to the jurisdiction of the bankruptcy court. *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) "("by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power")." The allowance or disallowance of a claim against the bankruptcy estate is a core proceeding. 28 U.S.C. § 157(b)(2)(B).

Choudhri then filed the original state court petition on April 26, 2024. The State Court Suit sought adjudication of the same tax liens that were the subject of Choudhri's Claim No. 21. Thus, as the district court correctly held, the bankruptcy court had "related-to" jurisdiction over Choudhri's state court suit. Related to jurisdiction is defined by examining "whether the

No. 25-20096

outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987) (emphasis in original). Because the State Court Suit was filed prior to confirmation and was based on a pre-petition contract, the limitations on post-confirmation jurisdiction that we outlined in *In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 391 (5th Cir. 2001), do not apply here. Accordingly, the Bank's removal of the State Court Suit pursuant to 28 U.S.C. § 1452 was proper.[4]

### IV.

Choudhri appealed two orders of the bankruptcy court in the adversary proceeding. Choudhri appealed both the bankruptcy court's order denying his motion to remand, and the bankruptcy court's order granting the Bank's motion to dismiss the third amended complaint. Both orders were affirmed by the district court, which affirmance is before us. We first address the dismissal order.

### A.

Preliminarily, the bankruptcy court dismissed the case for failure to serve the complaint within 90 days. Fed.R.Civ.Pro. 4(m). In its motion, the Bank argued that it had never been served with either the state court

---

[4] The removal statute reads as follows:

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C.A. § 1452(a).

petitions or the amended complaint. In response, Choudhri asserted that he had served the second amended petition on the Texas Secretary of State. In its dismissal order, the bankruptcy court found that the Bank was never served with the state court petition(s) prior to removal, or at any time after removal.

On appeal in the district court, Choudhri argued that the Bank had been served with the state court petition on May 3, 2024, through the bankruptcy court's CM/ECF system. Choudhri cites no authority that service of process of a state court petition filed in a Texas state court can be effected through electronic filing of a copy of the petition as an exhibit to a motion in a bankruptcy case. Choudhri did not contest the dismissal of the adversary proceeding under Rule 4(m), either before the district court, or here in the instant appeal. However, because the district court did not expressly find forfeiture, because dismissal under Rule 4(m) for failure of service is without prejudice, and because this litigation has been prolonged, we also pretermit the issue of forfeiture and proceed to engage with the related dismissal issues that the parties argue here.

The district court affirmed the bankruptcy court's dismissal because Choudhri failed to state a claim. FED.R.CIV.PRO. 12(b)(6).

Choudhri filed the original state court petition on April 26, 2024. The State Court Suit initially sought adjudication of the same tax liens that were the subject of Choudhri's proof of claim.

Choudhri's third amended complaint, filed after removal, alleged the Bank had breached the CSA. The bankruptcy court held that because it had already found the Bank had not breached the CSA, there was no further claim that could be brought. The bankruptcy court also dismissed the conversion and unjust enrichment claims relating to the tax liens for multiple

reasons including that the confirmed chapter 11 plan had adjudicated the ownership of the tax liens.

These same claims relating to the tax liens and the purported breach of the CSA have been ruled on multiple times by the bankruptcy court in response to a variety of pleadings filed either by Choudhri or related entities controlled by Choudhri in the bankruptcy court. Claims asserted in many of the bankruptcy pleadings relate to the same tax lien and breach of contract claims Choudhri asserts in the multiple amendments to the removed State Court Suit against the Bank.

On May 3, 2024, Choudhri controlled entity 2425 WL, LLC filed an objection to the Bank's Proof of Claim No. 13, which also asserted a right to the tax liens. The objection asserted that the tax liens were not owned by the Bank but instead were owned by Choudhri. The objection was overruled because, among other reasons, "the claims are valid claims, subject to the terms of the confirmed plan." The bankruptcy court also found that:

> Ali Choudhri made the same allegations regarding the tax liens in a state court case that was removed to this Court. This Court found that NBK did not breach the Confidential Settlement Agreement, and therefore there could be no valid claim of ownership by Mr. Choudhri. Furthermore, Mr. Choudhri has already withdrawn his claim, Claim 21, for these same tax liens under a stipulated order with the Chapter 11 Trustee.

On May 20, 2024, Choudhri (jointly with 2425 WL, LLC) filed a motion to prohibit the Bank from credit bidding on the sale of the Property. The motion asserted that there was a dispute over the tax liens, referenced the State Court Lawsuit, and asked that the Bank be prohibited from credit bidding on the Property at auction or sale in the bankruptcy case. After conducting an evidentiary hearing, the bankruptcy court denied the motion,

finding that the evidence did not support the allegation that the Bank had breached the CSA.

On June 22, 2024, the bankruptcy court confirmed the plan of reorganization. The confirmed plan defines the "NBK Tax Claim" as:

> [T]he Claim of NBK in the aggregate amount of $1,696,384.85 for tax liens imposed against the Property for years 2019 and 2020 pursuant to the Texas Property Tax Code, which liens have been assigned to NBK under that certain confidential settlement agreement, dated August 22, 2022.

The confirmed plan's treatment of the NBK Tax Claim is as follows:

> The NBK Tax Claim shall be Allowed in an amount equal to $1,696,384.85. If NBK is not the Purchaser of the Property, on or after the Effective Date, NBK shall receive Cash in an amount equal to the Allowed amount of the NBK Tax Claim. NBK shall not receive a distribution on account of the NBK Tax Claim if it is the Purchaser of the Property.[5]

The confirmed plan also defines Choudhri's tax liens claim, Claim No. 21, as an "Insider Claim." The confirmed plan cancels and extinguishes all Insider Claims, including Choudhri's Claim No. 21.[6]

The bankruptcy court held a two-day evidentiary hearing on plan confirmation, at which Choudhri appeared and testified. The court, in its memorandum opinion, specifically disagreed with the argument that the

---

[5] At the subsequent sale, the Bank was in fact the Purchaser of the Property. Thus, under the confirmed plan, the Bank received no distribution on account of its allowed tax claim.

[6] This claim was also later settled with the chapter 11 trustee.

Bank had breached the CSA. The bankruptcy court also specifically found that Choudhri was not credible.

Choudhri did not file an objection to plan confirmation or appeal plan confirmation.[7] Further, after the chapter 11 trustee objected to Choudhri's claim, he settled with trustee, agreeing to withdraw Claim No. 21.

The bankruptcy court repeatedly allowed Choudhri the opportunity to present evidence relating to his claims regarding the tax liens and the purported breach of the CSA. Each time, Choudhri either failed to present evidence to support his claims, or the evidence presented was not sufficient to support his claims. [8]

_____

[7] 2425 WL, LLC filed an objection to plan confirmation, but that objection was largely confined to the gatekeeping provisions in the plan and the classification of various claims. It did not specifically raise whether the plan's allowance of the Bank's tax liens claim, or the disallowance of Choudhri's tax liens claim, was proper. 2425 WL, LLC filed a notice of appeal of the plan confirmation, and the district court dismissed the appeal. 2425 WL, LLC then filed an appeal in this court, which has been stayed "pending proceedings in the bankruptcy court." 2425 WL, LLC v. National Bank of Kuwait, No. 24-20541 (5th Cir. Order filed June 23, 2025).

[8] Choudhri has continued to raise these claims in the bankruptcy court. The bankruptcy court's order of November 25, 2024, denying Choudhri's motion to comply with the gatekeeping provision of the confirmed chapter 11 plan, which motion reiterated at length Choudhri's claims against the Bank, is notable:

> The Court stresses that the effect of the confirmed plan was to end the vexatious litigation between entities controlled by Choudhri and NBK. Choudhri continues to raise factual and legal issues which this Court has already considered and rejected. . . . The Court cannot sufficiently stress that Choudhri continues to raise and argue the same basic facts and claims that this Court has found lacked foundation and merit. . . . Choudhri[] claims the Court has not considered the factual and legal arguments he makes in his motion. The Court strongly rejects any such claim. The Court has had ample opportunity to assess Mr. Choudhri's factual and legal

No. 25-20096

Under the Bankruptcy Code, the "provisions of a confirmed plan bind the debtor . . . and any creditor." 11 U.S.C. § 1141(a). As we have stated:

> Based on this provision, we have long understood a confirmed bankruptcy plan to have binding effect on subsequent proceedings that involve the same debt. This binding effect extends to third parties. Indeed, a confirmation order binds every entity that holds a claim or interest in the planned reorganization, regardless of whether they assert those interests before the bankruptcy court.

*Matter of LaHaye*, 17 F.4th 513, 517–18 (5th Cir. 2021) (internal citations omitted).

The confirmed plan made specific provisions for the treatment of the tax liens. Choudhri was bound by the confirmed plan, the other bankruptcy court orders relating to the tax liens, and the purported breach of the CSA. The bankruptcy court's dismissal of the adversary proceeding under Rule 12(b)(6) was proper.

### B.

Choudhri argues that even if the dismissal under Rule 12(b)(6) was proper, he should have been allowed to amend his complaint, because the Federal Rules require that "[t]he court should freely give leave when justice so requires." FED.R.CIV.PRO. 15(a)(2).

The bankruptcy court denied the request for leave to amend, finding that "Choudhri has no valid claims, which is sufficient grounds to deny leave to amend."

---

arguments and has repeatedly rejected them. Choudhri's purpose for pursuing these claims is improper and clearly vexatious.

No. 25-20096

In support of his request to the bankruptcy court to amend the pleadings, Choudhri stated only that leave was needed "to set out more fully the acts or omissions complained of in one place." He argues here that, "[g]iven the limitations of the bankruptcy court's analysis, and its clear misunderstanding of the factual predicate of Appellant's claims, allowing leave to amend would enable Appellant to more fully elucidate his claims."

This argument acknowledges that Choudhri is pressing the same claims he has already raised, and which have been dismissed. As we have said elsewhere in a similar context, "any amendment would have been futile." *Reddick v. Medtronic, Inc.*, 2023 WL 5447272 at *3 (5th Cir. August 24, 2023).

## C.

Finally, Choudhri argues that the motion to remand was improperly denied because a forum selection clause in the CSA specified that this matter should be brought in Harris County, Texas state court. The Bank asserts that Choudhri did not raise this issue below and is foreclosed from asserting it here. Choudhri replies that he did raise it in his supplemental briefing in the bankruptcy court, but provides no record citation, and instead cites to his supplemental brief filed in the bankruptcy court. A review of the supplemental brief does not show that he raised the forum selection clause. Choudhri has forfeited this issue. *See Norris v. Causey*, 869 F.3d 360, 373 n.10 (5th Cir. 2017) (noting that a party abandons an argument by failing to adequately brief it).

## V.

Because the bankruptcy court properly denied the motion for remand and dismissed the adversary proceeding, the judgment of the district court affirming the bankruptcy court is AFFIRMED.